TuRLRy, J.
delivered the opinion of the court.
The complainant charges that he became bound as surety for one Marcus Mitchell in the sum of two hundred and fifty dollars, for which'a judgment is,entered in the circuit court of Giles; that said Mitchell for the purpose of securing him from liability for the payment of said debt, and for other purposes, on the 2Sth day of December, 1840, made and executed a deed of trust to one William Arrowsmith as trustee, by which he conveyed a certain negro man named Jim in trust to him, which deed has been duly acknowledged and registered; that said Arrowsmith in fraud of complainant’s rights, purchased said negro man Jim from said Mitchell, and claims to hold him discharged from the trust, created in favor of the complainant, and prays that said trust be executed.
Arrowsmith answers and denies that he ever accepted the (.rust, and claims to hold the negro by Iona fide purchase from *446 Mitchell, with the knowledge and express assent of complainant, at the time the purchase was made.
A deed of trust being always made for the benefit of the cestui que trust, the assent of the trustee is not necessary to its validity; it is true, he may refuse to execute the trust, but in that case, a court of chancery will execute it for him; and the assent of the cestui que trust may be given at any time, after the deed is made, and will always be presumed in the absence of proof to the contrary. A trustee is not permitted by a court of chancery to buy the trust fund for his own benefit, and if he do so, he will still hold it for the use of the cestui que trust, unless he agree to the sale and this agreement must be proven by clear and explicit testimony, and this too, when the trustee sees, as it is his duty to do, that the purchase money is appropriated in discharge of the trust; much more so then will this be the case, where the purchase money is misappropriated, as it has been here.
What is the proof as to the agreement on the part of the complainant the cestui que trust, to the purchase of the trust property by the defendant Arrowsmith the trustee? John Hamilton says, “that Arrowsmith and Mitchell came to Field, and told him that they wanted the boy Jim and that if he would give him up, he should be clear of the debt for which he was bound for Mitchell and for which Jim had been conveyed in trust as security. Field replied that if he was clear of the debt, they might have the boy, but otherwise not — they told him he was clear, and upon that he gave up the boy.”
Joseph B. Childress says; “he heard a conversation between Arrowsmith and the complainant after the purchase of said negro by Arrowsmith, Field complained, of Mitchell’s treatment, Arrowsmith replied that he ought not to have consented to let Mitchell sell the negro, Field answered that he did not consent) but upon the condition, that the debt was paid.”
James S. Berthwright proves a conversation of the same character between complainant and Arrowsmith, which is confirmed Iry David Neel.
Mitchell says he sold the negro to Arrowsmith at the price of $650 cash, that Field consented to the sale, that he told him he *447 could and would pay the debt, that complainant replied that he was not afraid but that he would.
Bernard M. Bercli says, he heard Field say that he had consented to said sale, that lie had told Mitchell to sell the negro and do the best he could with him.
This proof would in all probability support Arrowsmith’s legal title to the negro acquired by his purchase from Mitchell, but we consider it wholly inadequate to support the position, that Field relinquished all interest in the trust fund, and agreed to place himself entirely at the mercy of Mitchell; on the contrary, we think its tendency is to prove that he was willing to the sale, provided hfc was released from responsibility, or in other words, that he had no objection to Arrowsmith’s buying the negro, if the debt was satisfied out of the proceeds, which might well have been done, and-which Arrowsmith was bound bylaw to see done, unless Field had in express terms released him from such responsibility — which there is no pretence for saying he did. So thought the chancellor, and we affirm his decree.